IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTOINETTE N., ) | |
| ) | |
|     Plaintiff, ) | |
| ) | No. 21-cv-3654 |
|     v. ) | |
| ) | Magistrate Judge Jeffrey I. Cummings |
| KILOLO KIJAKAZI,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
|     Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Antoinette N. ("Claimant") moves to reverse the final decision of the Commissioner of Social Security's ("Commissioner") denial of Claimant's application for a period of disability, Social Security Income ("SSI"), and Disability Insurance Benefits ("DIBs"). (Dckt. #22). The Commissioner responds, (Dckt. #28), asking this Court to uphold the decision to deny benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. 405(g) and 1383(c)(3). For the reasons that follow, Claimant's motion to reverse the decision of the Commissioner is granted, and the Commissioner's motion for summary judgment is denied.

**I.  BACKGROUND**

    **A.  Procedural History**

On April 10, 2012, Claimant, who was thirty years old at the onset of her disability, filed applications for DIBs and SSI due to bulging back discs, pinched nerves in her back, and back problems. (R. 73, 95, 743). Claimant alleges disability beginning May 26, 2011. (R. 34). Her

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Claimant only by her first name and the first initial of her last name. Acting Commissioner of Social Security Kilolo Kijakazi has also been substituted as the named defendant. Fed.R.Civ.P. 25(d).

1

applications were denied initially on July 31, 2012, and upon reconsideration on January 18, 2013. (R. 73-92, 95-118). On October 29, 2014, after a hearing, Administrative Law Judge ("ALJ") Brent C. Bedwell issued a written decision denying Claimant's applications for benefits. (R. 11-29). The Appeals Council denied review of the ALJ's decision, and Claimant appealed her case to this Court.

On January 16, 2018, now retired Magistrate Judge Michael T. Mason reversed the ALJ's decision and remanded the case for further proceedings, finding that the ALJ failed to properly assess Claimant's subjective symptoms and construct her residual functional capacity ("RFC"). (R. 904-924); see *Nelson v. Berryhill*, No. 16 C 7547, 2018 WL 439212 (N.D.Ill. Jan. 16, 2018). Specifically, the Court found that the ALJ: (1) failed to properly consider Claimant's financial reasons for only sporadically seeking medical treatment; (2) "played doctor" when he concluded Claimant would be off task up to 5% of the work day; (3) "did not address significant contrary lines of evidence when crafting th[e] RFC," which left it unsupported by substantial evidence; and (4) inadequately explained his reasoning for discounting Claimant's subjective symptoms. *See Nelson*, 2018 WL 439212, at *4-7. As such, the Court directed the ALJ to clearly explain his subjective symptoms finding as well as address significant contrary lines of evidence when re-crafting the RFC. *Id*.

On May 1, 2018, the Appeals Council vacated the Commissioner's final decision and remanded the case back to the ALJ for further administrative proceedings as directed by the Court. (R. 900-03). On remand, a different ALJ – Joel Fina – held hearings regarding Claimant's claims on October 18, 2018, March 18, 2019, and August 13, 2019, at which Claimant, two vocational experts, a medical expert, and Claimant's mother testified. (R. 871-79, 797-870, 766-796). Ultimately, in a written decision dated October 11, 2019 (the "Decision"),

the ALJ granted in part and denied in part Claimant's applications for benefits. (R. 738-65). First, he found that Claimant was *not* disabled between the alleged date of onset, May 26, 2011, and September 9, 2018. (R. 755). However, he went on to find that Claimant *was* disabled beginning on September 10, 2018. (*Id*.). The Appeals Council declined Claimant's request to review the portion of the Decision denying benefits, once again leaving the ALJ's decision as the Commissioner's final decision. This action followed.

      **B.**      **The Social Security Administration Standard to Recover Benefits**

In order to qualify for disability benefits, a claimant must demonstrate that she is disabled. An individual does so by showing that she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether a claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. §404.1521. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* In other words, a physical or mental impairment "must be established by objective medical evidence from an acceptable medical source." *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118 at *2 (N.D.Ind. Oct. 22, 2019). If a claimant establishes that she has one or more physical or mental

3

impairments, the ALJ then determines whether the impairment(s) standing alone, or in combination, are severe and meet the twelve-month duration requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, she is considered to be disabled, and the analysis concludes. If the listing is not met, the ALJ proceeds to step four. 20 C.F.R. §404.1520(a)(4)(iii).

Before addressing the fourth step, the SSA must assess a claimant's residual functional capacity ("RFC"), which defines her exertional and non-exertional capacity to work despite the limitations imposed by her impairments. The SSA then determines at step four whether the claimant is able to engage in any of her past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, she is not disabled. *Id*. If the claimant cannot undertake her past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform in light of her RFC, age, education, and work experience. An individual is not disabled if she can do work that is available under this standard. 20 C.F.R. §404.1520(a)(4)(v).

    **C.**    **The ALJ's Second Decision**

The ALJ applied the five-step inquiry required by the Act in reaching his decision to grant Claimant's request for benefits in part and deny it in part. At step one, the ALJ found that Claimant met the insured status requirements of the Social Security Act through June 30, 2014 and had not engaged in substantial gainful activity since her alleged onset date. (R. 745). At

step two, the ALJ determined that Claimant suffered from the severe impairments of obesity, degenerative disc disease of the lumbar spine, anxiety, and posttraumatic stress disorder with history of abuse since her onset date. (R. 746). The ALJ also noted that, since July 1, 2019, Claimant suffered from the severe impairment of a rupture of her anterior cruciate ligament. (*Id*.).

At step three, the ALJ concluded that Claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the Commissioner's listed impairments, including listings 1.04 ("Disorders of the spine") and 12.04 ("Depressive, bipolar, and related disorders"). (*Id*.). The ALJ also acknowledged Claimant's obesity at this step, explaining that although "there is no listing for obesity, the undersigned has included the factor of the claimant's obesity in the assessment of the claimant's other impairments and their relationships to the requirements of the listings." (*Id*.).

Before proceeding to step four, the ALJ determined two RFCs for Claimant. Relevant to this decision is the ALJ's RFC determination regarding Claimant's RFC *prior* to September 10, 2018. With respect to that time period, the ALJ found as follows:

> [T]he undersigned finds that prior to September 10, 2018, the date the claimant became disabled, the claimant had the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). She could not climb ladders, ropes, or scaffolds. She could occasionally climb ramps or stairs, balance, stoop, crouch, kneel, and crawl. The claimant had to avoid concentrated exposure to dangerous moving machinery. She had to avoid all exposure to unprotected heights. The claimant's work was limited to simple and routine tasks in work performed at a flexible pace, involving only end of the day production requirements, with no hourly or other periodic production quotas. The claimant could have only occasional interaction with the public in the work setting.

(R. 748). Next, at step four, the ALJ concluded that Claimant could not perform her past work as a teller and lab sample carrier. (R. 753). Then, at step five, the ALJ concluded that Claimant was not disabled prior to September 10, 2018 because "there were jobs that existed in significant

numbers in the national economy that the claimant could have performed," including in the representative positions of ink printer (43,500 nationally-available jobs); hand mounter (6,000 jobs); and dial marker (6,500 jobs). (*Id*.).

II. **STANDARD OF REVIEW**

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and free from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent symptom evaluations, or otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court determines whether the ALJ articulated an "accurate and logical bridge" from the evidence to his conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant

is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413 (citation omitted).

### III. ANALYSIS

Claimant urges this Court to reverse and remand the ALJ's Decision denying her benefits for the period between May 26, 2011 and September 9, 2018. Claimant argues, among other things, that: (1) despite this Court's remand instructions, the ALJ failed to properly consider Claimant's explanations for her gaps in medical treatment and once again "played doctor" by using his own lay opinions to fill evidentiary gaps in the record; and (2) the ALJ inadequately discussed the impact of Claimant's obesity in tandem with her other impairments as required under SSR 19-2p. (Dckt. #23 at 12-15). Because these errors require remand, the Court need not address Claimant's other arguments.[2] The Court's decision in this regard is not a comment on the merits of Claimant's other arguments and she is free to re-assert them on remand.

### A. The ALJ's repeated failure to properly assess Claimant's reasons for gaps in medical treatment requires remand.

In its January 16, 2018 Opinion, the Court remanded this case and instructed the ALJ to, *inter alia*, restate his reasons for the RFC including by specifically analyzing Claimant's reasons for sporadically seeking medical treatment for her impairments. As the Court explained:

> [T]he ALJ refers to Claimant's treatment as sporadic and conservative yet makes no mention of her testimony at the hearing that she had financial troubles and no access to a car. The ALJ heard this testimony, which is also supported by the record, yet he did not mention Claimant's explanation in his decision which draws this Court to conclude the ALJ did not properly consider it. *See Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (ALJ should have considered claimant's 'inability to pay for regular treatment and medicine.'); SSR 96–7P2, 1996 WL 374186, at *7 (ALJs must consider 'any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment'); *Beardsley v. Colvin*,

---

[2] *See Decamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("Because we determine that the ALJ did not properly evaluate DeCamp's limitations in concentration, persistence, and pace, we do not address DeCamp's other arguments.").

7

      758 F.3d 834, 840 (7th Cir. 2014) (remanding to agency where ALJ made no attempt to determine reason for conservative treatment). An ALJ 'must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide.' *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013); *See also Craft*, 539 F.3d at 679.

* * *

      Because the ALJ did not address significant contrary lines of evidence [including gaps in treatment] when crafting th[e] RFC, the ALJ did not provide substantial evidence to support his finding that Claimant's medical record and reported daily activities demonstrated an ability to perform light work. Accordingly, the Court remands.

*Nelson*, 2018 WL 439212, at *4-5.

      Claimant now argues that – despite the ALJ's recognition that "the record shows a large gap in treatment after December 2016 until September 10, 2018, the established onset date," (R. 750) – the ALJ once again erred by omitting any mention of Claimant's "testimony that she had financial troubles, difficulty getting medical providers to accept public aid, interference from an abusive fiancée, and no access to a car."[3] (Dckt. #23 at 12 (citing R. 51, 724, 829, 1193-1205, 1244-1246)). The Commissioner responds that the ALJ was not required to discuss every piece of evidence and that his lack of explanation meant he "clearly considered [Claimant's] reasons [for the gaps in care] and simply found them uncompelling." (Dckt. #29 at 7-8). The Court disagrees.

      To be clear, ALJs can cite "infrequent treatment or a failure to follow a treatment plan" in support of an adverse credibility finding "where the claimant does not have a good reason for the failure or infrequency of treatment." *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014)

---

[3] Again, the Court notes that Claimant's argument relating to the ALJ's consideration of a gap in her medical care relates to a different time frame than the time frame at issue in the first ALJ's 2014 decision. The ALJ not only repeated his predecessor's error in relying on a new, different gap in care, but also failed to reconsider the explanations for the prior period in the 2014 decision.

8

(citing *Craft*, 539 F.3d at 679). However, "[b]efore drawing negative inferences about a claimant's symptoms from a failure to pursue treatment, an ALJ first must consider the claimant's explanations for that failure." *Morrison v. Saul*, 806 Fed.Appx. 469, 474 (7th Cir. 2020) (citing *Roddy*, 705 F.3d at 638); *see also Craft*, 539 F.3d at 679 (ALJ "must not draw any inferences" about a claimant's condition from failure to receive treatment unless they explore their explanations for infrequent care); *Beardsley*, 758 F.3d 834 (same). In short, inferences cannot be drawn "about a claimant's condition from this failure unless the ALJ has explored the Claimant's explanations as to the lack of medical care." *Beardsley*, 758 F.3d at 840.

During Claimant's post-remand hearings, the ALJ adduced testimony from Claimant regarding her reasons for not utilizing expanded care. In particular, Claimant explained that various obstacles inhibited her access to medical care, including: (1) inability to pay; (2) inadequate access to health insurance coverage; (3) inability to navigate use of "public aid;" (4) her living situation;[4] (5) lack of access to a vehicle to attend appointments; and (6) ineligibility for certain procedures or treatments due to her smoking habit and obesity. (*See* R. 778-82, 828-31).

Notwithstanding Claimant's hearing testimony – and despite the Court's prior remand instructions – the ALJ again committed reversible error when he relied on Claimant's sporadic medical care to discount her subjective complaints of pain without considering any of the explanations Claimant testified to for not consistently seeking care. *See Morrison*, 806 Fed.Appx. at 474 (ALJ properly considers a claimant's explanation for failures to seek care by asking for an explanation at the hearing *and then* considering any such explanation in the

---

[4] Claimant testified that from the time of her first surgery in 2007, through sometime in 2015, she lived on public aid in Wisconsin with an abusive partner that controlled many aspects of her life. (R. 42, 778-80).

9

decision); *Oak v. Kijakazi*, 22-cv-138-slc, 2022 WL 17580595, at *7 (W.D.Wis. Dec. 12, 2022) (same). Instead, the ALJ simply ended his overview of Claimant's medical history with this note:

> The claimant started physical therapy for neck and left shoulder pain in late 2016 but was discharged by early 2017 after failing to return. In fact, the record shows a large gap in treatment after December 2016 until September 10, 2018, the established onset date.

(*Id*.) (internal citation omitted). Because the ALJ failed to explain *why* Claimant's "failure to return" to physical therapy and "large gap in treatment" undercut her subjective statements of pain – particularly in the face of Claimant's well-documented explanations for that gap in treatment – his analysis is not supported by substantial evidence and another remand is required.[5] SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996); *see, e.g.*, *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) ("The ALJ erred similarly by disregarding Stage's need for hip replacement because she had not actually undergone surgery without exploring why she had not."); *Tonya R. v. Saul*, No. 19-cv-2374, 2020 WL 1675666, at *4 (N.D.Ill. Apr. 6, 2020) (ALJ erred by relying heavily on claimant's failure to seek treatment without addressing her reasons for doing so); *Nelson*, 2018 WL 439212, at *7; *Smith Moore v. Colvin*, No. 14 C 0922, 2015 WL 5920875, at *9 (N.D.Ill. Oct. 8, 2015) (ALJ erred by not accounting for Claimant's lack of carfare, filled treatment lists, lack of insurance and confusion about acquiring it in the decision); *cf. Morrison*, 806 Fed.Appx. at 474 (ALJ pointed to "specific findings" in the decision to support negative inference regarding infrequent medical treatment).

---

[5] The Commissioner attempts to neutralize the ALJ's error by describing Claimant's proffered reasons for not attending treatment and asserting that "[f]or the ALJ, [Claimant's] explanations simply did not sufficiently explain away [her] limited treatment during the latter part of the relevant period." (Dckt. #29 at 8). However, the ALJ did not articulate this rationale and "the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace." *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943)).

On remand, the ALJ must clearly explain why he relied upon any gaps in Claimant's medical care in assessing Claimant's subjective symptoms and her RFC.

### B. The ALJ failed to consider the impact of Claimant's obesity on her ability to perform sedentary work.

Claimant further argues that the ALJ inadequately analyzed her obesity – which the medical expert testified has a "serious effect on" the persistence of low back pain – in crafting the RFC. (R. 772-73); (Dckt. #23 at 14-15 (citing *Browning v. Colvin*, 766 F.3d 702, 707) (7th Cir. 2014)). The Commissioner counters by asserting that the ALJ's inclusion of Claimant's obesity as a severe impairment at step two, along with his statement that he "considered obesity 'in the assessment of the claimant's other impairments and their relationship to the requirements of the listings,'" (R. 746), was sufficient to shield the Decision from any finding of error. (Dckt. #29 at 9).

SSR 19-2p "provides guidance on how we establish that a person has a medically determinable impairment of obesity and how we evaluate obesity in disability claims." Policy Interpretation Ruling Titles II and XVI: Evaluating Cases Involving Obesity, 2019 WL 2374244, *1. Although "obesity is no longer a standalone disabling impairment, the ALJ must still consider its impact when evaluating the severity of other impairments." *Robinson v. Kijakazi*, Case No. 21-CV-238-SCD, 2022 WL 443923 at *4 (E.D.Wis. Feb. 14, 2022), *quoting Stephens v. Berryhill*, 888 F.3d 323, 328 (7th Cir. 2018). "[T]he combined effects of obesity with another impairment may be greater than the effects of each of the impairments considered separately." SSR 19-2p, 2019 WL 2374244 at *2. Under SSR 19-2p, the ALJ must also "consider the limiting effects of obesity when assessing a person's RFC" and must explain how they reached their conclusions. *Id*. at *4. The ALJ failed to do so here.

11

The record indicates that Claimant's weight played an important role in the deterioration of her health. Indeed, Claimant's medical records show that she qualified as obese as early as 2011, and her weight and BMI both drastically increased according to reports from 2014 and 2018.[6] Moreover, during her post-remand hearings, Claimant testified about her increasing weight and its impact on her life and functional limitations. (R. 785-86, 830-32, 834). For example, Claimant testified that she was not eligible for certain procedures related to her back condition due to her obesity. (R. 834). And – perhaps most importantly – at the August 13, 2019 hearing, medical expert Darius Ghazi, M.D., told the ALJ that Claimant's "excess weight has a bearing on the persistence of low back pain . . . [which] has a serious effect on it." (R. 772).

Notwithstanding this clear record regarding Claimant's morbid obesity and its potential effect on her functional limitations, the ALJ did not properly evaluate this evidence. Indeed, aside from listing Claimant's obesity as a severe impairment, the ALJ only mentioned Claimant's obesity twice. First, he identified obesity in a boilerplate statement at step two: "As there is no listing for obesity, the undersigned has included the factor of the claimant's obesity in the assessment of the claimant's other impairments and their relationships to the requirements of the listings." (R. 746). Second, as part of his articulation of Claimant's RFC, the ALJ stated, without elaboration, that "[i]n consideration of [Claimant's] pain and obesity, she could occasionally climb ramps or stairs, balance, stoop, crouch, kneel, and crawl." (R. 751).

---

[6] On April 4, 2011, Claimant measured 5'1" and weighed 178 pounds, (R. 474); on May 4, 2012, 185 pounds, (R. 606); on July 7, 2014, 199 pounds with a BMI of 37.62, (R. 723); and on September 21, 2018, eleven days after the onset of her disability according to the ALJ, Claimant weighed 227 pounds, with a BMI of 43.4. (R. 2323). This shows a worsening from Level II obesity to Level III, or morbid, obesity. *See Browning*, 766 F.3d at 704 (persons with BMI of over 40 are considered morbidly obese).

This cursory analysis – without more – is insufficient to support a logical bridge between the evidence and the ALJ's RFC determination as it relates to her obesity. *Browning*, 766 F.3d at 707 ("The [ALJ] acknowledged that the plaintiff's obesity was a factor in her leg pain, but did not discuss its bearing on her ability to do sedentary work."). Indeed, as the Seventh Circuit has repeatedly noted, morbid obesity "might make it difficult for [a claimant] to sit for long periods of time, as sedentary work normally requires" and "the likely difficulties that morbidly obese persons . . . face even in doing sedentary work are sufficiently obvious." *Sandra S. v. Kijakazi*, No. 19 cv 8421, 2022 WL 4291049, at *8 (N.D.Ill. Sept. 16, 2022), *quoting Browning*, 766 F.3d at 707; *Michael W. v. Kijakazi*, No. 21-CV-1511, 2022 WL 3684628, at *2-3 (N.D.Ill. Aug. 25, 2022) (ALJ's decision remanded "because it lacks an adequate discussion of Plaintiff's sitting abilities (or lack thereof)" in light of her obesity); *Stevens v. Colvin*, No. 14 CV 201, 2016 WL 1535156, at *4-5 (N.D.Ill. Apr. 15, 2016) (remanding for the ALJ to analyze how claimant's extreme obesity interacted with her other impairments and how that interaction factored into her RFC); *Mitchell v. Colvin*, No. 13 CV 50209, 2015 WL 5227411, at *4 (N.D.Ill. Sept. 8, 2015).

If the ALJ believed that Claimant's obesity warranted only certain functional limitations – i.e., that "she could occasionally climb ramps or stairs, balance, stoop, crouch, kneel, and crawl" – he was obligated to explain why. *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012); *see Goins*, 764 F.3d at 682 ("Does the SSA think that if only the plaintiff were thin, she could climb ropes? And that at her present weight and with her present symptoms she can, even occasionally, crawl, stoop, and crouch?"). Because the ALJ failed to properly do so here, remand is required for this reason as well.[7] *See, e.g.*, *Goins v. Colvin*, 764 F.3d 677, 681 (7th

---

[7] Moreover, contrary to the Commissioner's assertion, the ALJ's error in this regard is not harmless. Although an ALJ's failure to properly account for the limiting effects of a claimant's obesity *may* be harmless when the claimant "does not identify any evidence in the record that suggests greater limitations from her obesity than those identified by the ALJ, [or] explain how her obesity exacerbated her

13

Cir. 2014) (remanding where the ALJ's lack of analysis of the claimant's obesity left the Court unable to understand how the ALJ could conclude the claimant's capacity for work); *Browning*, 766 F.3d at 707 (remanding where ALJ acknowledged obesity factored into other impairments but did not discuss its bearing on the claimant's ability to do sedentary work); *Dwayne R. v. Berryhill*, No. 17 C 6343, 2019 WL 1514989, at *4 (N.D.Ill. Apr. 8, 2019) (remanding where ALJ failed to analyze obesity in combination with the claimant's other impairments); *Hensley v. Saul*, CAUSE NO. 2:20-CV-123 DRL, 2021 WL 753905, at *4-5 (N.D.Ind. Feb. 26, 2021) (remanding where ALJ did not discuss how claimant's obesity might impact their other impairments at all); *cf. Stephens v. Berryhill*, 888 F.3d 323, 328-29 (7th Cir. 2018) (obesity assessment upheld where ALJ determined it was a severe impairment, noted its aggravating effects on other impairments, repeatedly noted the claimant's obesity, and explained why she found obesity enhanced his credibility and reports of functional limitations).

In sum, the ALJ on remand should assess how Claimant's combined impairments, including her obesity, was accounted for in the RFC.

---

underlying impairments," *Shumaker v. Colvin*, 632 Fed.Appx. 861, 867 (7th Cir. 2015), Claimant checks both boxes here. At the hearing, Claimant clearly delineated how her weight diminished her ability to ambulate and receive care by, among other things, testifying that the combination of her weight, back, and knee impairments make it "very difficult for sitting and standing;" she has pain and numbness in her legs at points; and she has trouble getting out of a seated position. (R. 777, 785, 834; Dckt. #23 at 14). And, again, the medical expert explicitly testified that Claimant's weight "has a serious effect" on the persistence of her lower back pain. (Dckt. #23 at 14 (citing R. 772-73)).

## CONCLUSION

For the foregoing reasons, Claimant's motion to reverse the decision of the Commissioner, (Dckt. #22), is granted and the Commissioner's motion for summary judgment, (Dckt. #28), is denied. This case is remanded to the Social Security Administration for further proceedings consistent with this Opinion.

**Date: October 4, 2023**

**Jeffrey I. Cummings**
**United States Magistrate Judge**